JOHN H. DONBOLI (SBN: 205218)
E-mail:  jdonboli@delmarlawgroup.com
JL SEAN SLATTERY (SBN: 210965)
E-mail:  sslattery@delmarlawgroup.com
**DEL MAR LAW GROUP, LLP**
12250 El Camino Real, Suite 120
San Diego, CA 92130
Telephone:  (858) 793-6244
Facsimile:   (858) 793-6005

SHANNON L. HOPKINS (*pro hac vice* to be filed)
shopkins@zlk.com
SHANE ROWLEY (*pro hac vice* to be filed)
srowley@zlk.com
NANCY KULESA (*pro hac vice* to be filed)
nkulesa@zlk.com
ANDREA CLISURA (*pro hac vice* to be filed)
aclisura@zlk.com
**LEVI & KORSINKSY, LLP**
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: (232) 363-7500
Facsimile: (866) 367-6510

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER BONNEMA, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| HOMEAWAY, INC., and YAPSTONE, INC. d/b/a VACATIONRENTPAYMENT, | |
| Defendants. | |

Plaintiff Christopher Bonnema ("Plaintiff"), by and through his undersigned attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against defendants HomeAway, Inc. ("HomeAway"), and YapStone, Inc. ("YapStone," together with HomeAway, "Defendants").

## NATURE OF THE ACTION

1.     HomeAway is a vacation rental company with websites representing over one million listings of vacation rental homes in 190 countries.

2.     Through various websites, including, among others, VRBO.com, HomeAway operates an online vacation rental property marketplace that allows property owners and managers to list properties available for rental to travelers. Property owners and managers pay fees in order to list their properties on HomeAway's websites, with photos, reviews, location details, pricing, and contact information.   Travelers search the HomeAway family of websites to find and reserve available rentals.   HomeAway offers HomeAway Payments, which it presents to its users as a secure online payment transaction method.

3.     YapStone acts as partner and online payment processor for HomeAway through its service VacationRentPayment.   Through VacationRentPayment, YapStone processes electronic payments, including HomeAway Payments, for more than 300,000 vacation rental properties across the country.

4.     Although YapStone claims to "maintain the highest level of security possible" and have "developed a rich suite of security features for [its] online payment processing platform," YapStone failed to secure sensitive financial and personal information for Plaintiff and other HomeAway property managers and owners for more than a year.

CLASS ACTION COMPLAINT

5. In September 2015, YapStone and HomeAway alerted property managers and owners that personal information from HomeAway payment applications stored by YapStone was accessible and had been unlawfully exposed via a YapStone URL from approximately July 15, 2014 to August 5, 2015—a period of over a year (the "Data Breach"). *See* YapStone Breach Notification Letter ("Notification Letter") attached hereto as Exhibit A.

6. Although YapStone learned of the breach by August 4, 2015, neither YapStone nor HomeAway took any action to alert members of the Class, as defined herein, that their personal information had been compromised until approximately six weeks after Defendants became aware of the issue. *See* Exhibit A (Notification Letter dated September 11, 2015).

7. According to the Notification Letter, the wrongfully disclosed information includes Class members' names, e-mail addresses, physical addresses, dates of birth, bank account and Social Security numbers. *See id.*

8. Because Defendants failed to take necessary precautions to safeguard Class members' information, Class members' personal data may remain available for illegal misuse for years.

9. As a direct and proximate result of Defendants' wrongful actions, inaction, and omissions, and the resulting Data Breach, Class members have suffered and will continue to suffer economic damages, including *inter alia* the costs of monitoring their credit, monitoring their financial accounts, and mitigating their damages, and they face an immediate and substantial risk of identity theft and fraud.

10. Plaintiff brings this action, on behalf of himself and all others similarly situated, against Defendants for failing to safeguard his and other Class members' personally identifiable information ("PII") and bank account information ("BAI," together with PII, "Private Information"), and for failing to provide timely and adequate notice to Plaintiff and other Class members that their information had been

stolen and of the scope and the extent of the breach.  Plaintiff asserts claims for negligence, breach of implied contract, unjust enrichment, and violations of the California Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.* ("UCL"), and the California Data Breach Law, California Civil Code §§ 1798.80, *et seq.* ("DBL").  Plaintiff seeks damages, restitution, and injunctive relief on behalf of the Class.

## JURISDICTION AND VENUE

11.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

12.    While the exact number of members in the proposed class is unknown at this time, Plaintiff has reason to believe that the Private Information of thousands of property owners and managers was compromised during the relevant period.  The number of Class members can be discerned from the records maintained by Defendants.

13.    Diversity of citizenship exists between Plaintiff and Defendants. Plaintiff is a citizen of California, residing in San Luis Obispo County, California. Defendant HomeAway is a Delaware corporation with its headquarters located in Texas.  Therefore, diversity of citizenship exists.

14.    While the exact damages to Plaintiff and the Class are unknown at this time, Plaintiff reasonably believes that their claims exceed five million dollars ($5,000,000) in the aggregate.

15.    This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of conducting business in the State of California.  Moreover, defendant YapStone is headquartered in the State of California.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do substantial business in this District, and a substantial part of the events giving rise to Plaintiff's claims took place within this judicial district, including that YapStone maintains it headquarters within this District and the Data Breach affected consumers in this District.

**INTRADISTRICT ASSIGNMENT**

17.     Assignment to the Oakland Division is proper because this action arises in Contra Costa County, California, where YapStone maintains its principle offices and where a substantial part of the events or omissions which give rise to Plaintiff's and Class members' claims occurred.

**PARTIES**

18.     Plaintiff is a citizen of California residing in San Luis Obispo County, California.  Plaintiff has listed property located in the Dominican Republic for rent through VRBO.com.  In mid-September, 2015, Plaintiff received the Notification Letter from YapStone and HomeAway, informing him that both his PII and BAI had been exposed to thieves.

19.     Defendant HomeAway is a Delaware corporation with its headquarters located at 1011 W. Fifth Street, Suite 300, Austin, Texas 78703.  HomeAway operates a network of online vacation rentals through websites, including HomeAway.com, VRBO.com, and VacationRentals.com, among others.  Property owners and managers pay HomeAway listing fees in the form of annual subscriptions or performance-based payments based on bookings or inquiries.  HomeAway also sells, directly or through third parties, products such as travel guarantees, insurance, and property management software and services.

20.     Defendant YapStone is a Delaware corporation with its headquarters located at 2121 North California Boulevard, Suite 400, Walnut Creek, California, 94596.  YapStone does business as VacationRentPayment, which HomeAway

CLASS ACTION COMPLAINT

describes as its partner.   YapStone allowed unauthorized persons access to a YapStone URL from approximately July 4, 2014 to August 5, 2015, resulting in a serious breach of Class members' Private Information stored by YapStone.

21.    Plaintiffs allege, on information and belief, that at all times herein, Defendants' agents, employees, representatives, executives, directors, partners, and/or subsidiaries were acting within the course and scope of such agency, employment, and representation, on behalf of Defendants.

22.    Plaintiff is informed and believes that each defendant acted in all respects pertinent to this action as the agent of the other defendant, carried out a joint business plan or policy in all respects pertinent hereto, and the acts of each defendant are legally attributable to the other defendant.

## **FACTUAL ALLEGATIONS**

23.    Through websites such as HomeAway.com and VRBO.com, HomeAway operates an online vacation rental property marketplace.   Plaintiff and other Class members pay fees to list their properties as available for rent on HomeAway's websites.

24.    YapStone, doing business as VacationRentPayment, processes electronic payments for more than 300,000 vacation rental properties across the country, including properties listed through HomeAway websites.   In 2014, YapStone had over $8 billion in payment volume and expects to process over $14 billion this year.

25.    As HomeAway's partner and payment processor, YapStone was entrusted with and stores Private Information for HomeAway property managers and owners who use HomeAway Payments, including Plaintiff and other Class members.

26.    Plaintiff has listed rental property located in the Dominican Republic on the VRBO.com website, which became part of the "HomeAway family" in 2006.

27.     In order to accept electronic payments for rentals of this property through HomeAway Payments on VRBO.com, approximately two years ago Plaintiff submitted a HomeAway Payments application.  Thus, Plaintiff accepts electronic payments from guests who book his rental property through HomeAway Payments and logs into his account through the HomeAway.com and/or VRBO.com websites.

28.     In mid-September, 2015, Plaintiff received the Notification Letter dated September 11, 2015, in which YapStone and HomeAway notified Plaintiff of the Data Breach and that he was among the individuals whose Private Information was exposed.   Defendants notified Plaintiff and other Class members that from approximately July 15, 2014 to August 5, 2015—a period of over a year—Private Information from HomeAway payment applications stored by YapStone was accessible to thieves via a YapStone URL.

29.     According to Defendants, the Data Breach was first discovered on August 4, 2015.   Thus, it was approximately six weeks after discovery before Plaintiff received any notification that his Private Information had been exposed.  It was well over a year since Plaintiff's and Class members' information had been compromised.

30.     Prior to sending the Notification Letters, neither YapStone nor HomeAway took any action to alert members of the Class that their Personal Information had been stolen.

31.     Both HomeAway.com and VRBO.com promise, "Paying online through HomeAway is more secure for you and your travelers.  There are processes in place to ensure payments go through HomeAway system…." https://www.homeaway.com/info/lyp2 (last visited Oct. 27, 2015); *see also* https://www.vrbo.com/info/list-your-property?icid=IL_LYP_O_Text_lyptopnav (last visited Oct. 23, 2015) ("Paying online through VRBO is more secure for you

CLASS ACTION COMPLAINT

1   and your travelers.   There are processes in place to ensure payments go through

2   VRBO system….").

3       32.   Additionally, the VRBO.com website presents HomeAway Payments

4   as a secure payment method, without any mention at all of YapStone:

## What is HomeAway Payments?

HomeAway Payments is a payment transaction method that HomeAway offers to their owners and property managers. It is the most secure way to pay for a vacation rental on our website. Vacation rental owners and property managers can send an email invoice via HomeAway Payments and travelers are able to make immediate and secure payments by Visa, MasterCard, Discover cards or eChecks (U.S. residents only). Travelers who pay through HomeAway Payments have their payment 100% guaranteed for up to $10,000 against internet fraud. As owners, signing up for this secure method is another form of trust and confidence that can be established with travelers.

From the moment a traveler's payment information is entered, HomeAway Payments protects the credit card and personal information using encryption and advanced patented tokenization services to protect the traveler's credit card transaction.

http://help.vrbo.com/articles/en_US/Article/What-is-HomeAway-Payments   (last visited Oct. 23, 2015).

    33.   YapStone itself claims to "maintain the highest level of security possible" and have "developed a rich suite of security features for [its] online payment processing platform."   YapStone further states it "employ[s] the industry's highest security standards to protect the information of both [its] partners and their customers" and "continually put[s its] systems and [its] teams to the test":

## PEACE OF MIND COMES STANDARD

As an online payment processing company, YapStone's foremost objective is to process payments while employing the industry's highest security standards to protect the information of both our partners and their customers. To maintain the highest level of security possible, we continually put our systems and our teams to the test. In collaboration with external partners, we conduct rigorous annual audits. We have also developed a rich suite of security features for our online payment processing platform.

http://www.yapstone.com/payment-processing/security/ (last visited Oct. 27, 2015).

8

CLASS ACTION COMPLAINT

34.    The    YapStone    Privacy    Policy,    linked    to    through vacationrentpayment.com, states in part:

> Your privacy is important to us. In order to better protect your privacy, we have developed this privacy policy ("Privacy Policy").
> …
> 1.  Information We May Collect from You
>
> **We may collect and process the following data about you:**
>
> **1.  Information that you provide by filling in forms, applications, or provide to us to facilitate our customer due diligence procedures. This includes personally identifiable information (PII), information provided at the time of registering for our services, engaging in a transaction, establishing reoccurring transactions, or requesting further services.** We may also ask you for information when you report a problem with our website.
>
> 2. If you contact us, we may keep a record of that correspondence regardless of the means.
>
> 3. We may also ask you to complete surveys that we use for research purposes, although you do not have to respond to them.
>
> 4. Details of transactions you carry out through our services and of the fulfillment of your transactions.
>
> 5. Details of your visits to our websites including, but not limited to, traffic data, location data, weblogs and other communication data, whether this is required for our own purposes or otherwise and the resources that you access.
>
> 6. **When you initiate a payment transaction, we also collect financial information such as credit card, debit card, or bank account details.** We do so in accordance with the highest level of the Payment Card Industry Data Security Standard (PCI-DSS), as YapStone is a Level One provider.
>
> 7. For verification purposes we reserve the right to request proof of identification in an offline format. **This may include passport, driver's license, proof of ownership, utility bill, business data, or other items we deem necessary to establish identity, residence, or place of business. Such proofs of identification**

**may be stored electronically on our servers** in order to comply with our legal and regulatory obligations.

8. Your IP address, computer or device information including device-specific parameters, and access times may be tracked. We do this to prevent fraud, establish your identity, and provide promotional information which may be of interest to you.

9. Data necessary to detect and prevent fraud may be collected and compiled; we will either do this directly or in conjunction with a third-party who use this data to detect and protect against fraud ("third-party experts"). These third-party experts are subject to privacy and confidentiality obligations.

10. Competitions, promotions, or giveaways may be made available on our websites or through third parties from time to time. You do not have to participate in these. However, if choose to you may be asked to disclose some personal information. At the time of entering the promotion, we will disclose in its specific Terms and Conditions how your personal information will be used. Please do not participate in any promotion if you do not agree to such usage.

…

3.  Where We Store Your Personal Data

The data that we collect from you will be processed and stored in the United States.  By submitting your personal data, you agree to the transfer, storing, or processing in the United States.  **YapStone will take all steps reasonably necessary to ensure that your data is treated securely and in accordance with this privacy policy.  All information you provide to us is stored on our secure servers.** Where we have given you (or where you have chosen) a password that enables you to access certain parts of our service or engage with our customer service team, you are responsible for keeping this password confidential and adequately complex….

*See* YapStone Privacy Policy, http://www.yapstone.com/privacy-policy/ (emphasis added) (last modified June 15, 2014), attached hereto as Exhibit B.

35.    Defendants profit from the Private Information they collect and store from Class members by, for example, using such information for marketing purposes.  *See, e.g., id.*

36.    Plaintiff and Class members entrusted Defendants with their Private Information.  Defendants betrayed Plaintiff's and Class members' trust by failing to properly safeguard and protect their Private Information in violation of the law and in breach of their duties to Class members to keep this information secure.

37.    YapStone, acting as partner and agent of HomeAway, failed to live up to its promises to "take all steps reasonably necessary to ensure [Class members'] data is treated securely."

38.    Because Defendants failed to secure the Private Information of Plaintiff and Class members, this information was unlawfully disclosed to thieves.

39.    Plaintiff and other Class members reasonably believed that Defendants employed state of the art data security practices and policies.  In addition to the affirmative statements above, Defendants failed to disclose their negligent and insufficient data security practices and, as a result, Plaintiff and other Class members decided to use Defendants' online payment services.  In reliance on Defendants' affirmative statements and omissions, Plaintiff and other members of the Class submitted their Private Information to Defendants, utilized Defendants' online payment systems, which they reasonably believed to be secure, and paid transaction fees to Defendants.  Plaintiff and other consumers would not have utilized the online payment services of Defendants had they known that, in fact, Defendants did not take all necessary precautions to secure their Private Information.  Defendants accepted Class members' Private Information and transaction fees, but failed to live up to their promises to secure Class members' Private Information and breached an implied contract with Plaintiff and Class members.

40.    Defendants admit that the Private Information exposed in the Data Breach includes names, e-mail addresses, physical addresses, dates of birth, bank account and Social Security numbers.

41.    This Private Information is valuable.  Indeed, "PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets."  John T. Soma, *et al., Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets,* 15 RICH. J.L. & TECH. 11, at *3-4 (2009) (citations omitted).  Private Information is particularly valuable to identity thieves who often trade it on the "cyber black-market" for years.  Plaintiff and other Class members have been deprived of the value of their Private Information, for which there is a well-established market.

42.    Because Plaintiff's and Class members' Private Information has been exposed to thieves, they face a serious and immediate threat of identity theft, fraud, drained bank accounts, phishing, and opening or re-opening of accounts in their name.  Fraudulent use of the information can continue for years.

43.    The various risks associated with stolen Private Information have been widely publicized, particularly in the wake of serious data breaches at such entities as Target Corp., Home Depot, Inc., Sony Corp., and Anthem, Inc.  Defendants knew or should have known about the risk of security breaches and should have taken appropriate and standard measures to guard against such attacks.

44.    The Notification Letter vaguely states that "certain personal information you provided on your HomeAway Payments application that was stored by YapStone may have been accessible by unauthorized persons via a YapStone URL" and that "outside experts [have been retained] to investigate the incident to understand the level of impact."  The Notification Letter fails to explain how the

breach occurred, or why Class members' Private Information was not properly safeguarded and protected.

45.    The Notification Letter advised Plaintiff that YapStone has arranged for him to receive 24 months of credit monitoring from Experian and identity theft insurance.

46.    The credit monitoring services being offered are not adequate in time or comprehensive enough in coverage.  Given the nature of the Private Information that was compromised, the features of a premium three-bureau identity service are necessary.  At best, the credit monitoring service offered by Defendants may reveal new credit accounts opened with compromised PII, but it does nothing to prevent unauthorized charges made to existing accounts.

47.    Indeed, the Notification Letter puts the burden on Plaintiff and Class members to protect themselves and mitigate their damages – such as reviewing their account statements, monitoring their credit reports, and changing their passwords. Many of Defendants' mitigation suggestions require Plaintiff and Class members to incur additional out-of-pocket expenses. For example, there are fees required to place and remove a "security freeze" on one's credit report, as suggested by the Notification Letter, each time it is placed at each of the three credit reporting agencies (Experian, Equifax, and Trans Union).  Periodically monitoring one's credit reports, another option suggested by the Notification Letter, would cause a Data Breach victim to incur an expense to see his or her credit reports beyond the one free annual report to which they are entitled.

## CLASS DEFINITION AND ALLEGATIONS

48.    Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure for the purpose of asserting the claims alleged in this Complaint on a common basis.  Plaintiff brings

this action on behalf of himself and all members of the following class comprised of:

> **All persons in the United States, exclusive of Defendants and their employees, whose personal and/or financial information was disclosed in the Data Breach (the "Class").**

49.    Plaintiff also brings this action on behalf of a subclass defined as:

> **All persons in the State of California, exclusive of Defendants and their employees, whose personal and/or financial information was disclosed in the Data Breach (the "Subclass").**

50.    Plaintiff reserves the right to modify or amend the definitions of the Class and Subclass after he has had an opportunity to conduct discovery.

51.    ***Numerosity.  Rule 23(a)(1).***  The members of the Class and Subclass are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes that the proposed Class contains at least thousands of individuals who have been damaged by Defendants' conduct as alleged herein.  The number of Class members is unknown to Plaintiff but could be discerned from the records maintained by Defendants.

52.    ***Existence of Common Questions of Law and Fact.  Rule 23(a)(2).*** This action involves common questions of law and fact, which include, but are not limited to, the following:

a.    Whether Defendants unlawfully maintained or disclosed Plaintiff's and Class members' PII or BAI;

b.    Whether Defendants unreasonably delayed in discovering and/or notifying affected customers of the Data Breach;

c.    Whether the Notification Letter provided adequate notice of the Data Breach;

CLASS ACTION COMPLAINT

d.   Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information they store and which was compromised in the Data Breach;

e.   Whether Defendants' conduct was negligent;

f.   Whether Defendants entered into an implied contract with Plaintiff and Class members to safeguard their Private Information;

g.   Whether Defendants were unjustly enriched;

h.   Whether Defendants violated the DBL;

i.   Whether Defendants violated the UCL; and

j.   Whether Plaintiff and the Class are entitled to damages, injunctive relief, restitution or other equitable relief and/or other relief as may be proper.

53.   ***Typicality. Rule 23(a)(3).***   All members of the Class have been subject to and affected by the same conduct and omissions by Defendants.  The claims alleged herein are based on the same violations by Defendants that harmed Plaintiff and members of the Class.  As victims of the Data Breach, all members of the Class were subjected to the same wrongful conduct.  Plaintiff's claims are typical of the Class' claims and do not conflict with the interests of any other members of the Class.  Defendants' unlawful, unfair, deceptive, and/or negligent actions and omissions concern the same business practices described herein irrespective of where they occurred or were experienced.

54.   ***Adequacy. Rule 23(a)(4).***   Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

55.   ***Injunctive and Declaratory Relief.   Rule 23(b)(2).***   Defendants' actions regarding the conduct and omissions regarding the Data Breach are uniform as to members of the Class.  Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief as requested herein is appropriate respecting the Class as a whole.

56.   ***Predominance and Superiority of Class Action.   Rule 23(b)(3).*** Questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other methods for the fast and efficient adjudication of this controversy, for at least the following reasons:

a.   Absent a class action, members of the Class as a practical matter will be unable to obtain redress, Defendants' violations of their legal obligations will continue without remedy, additional consumers may be harmed, and Defendants will continue to retain their ill-gotten gains;

b.   It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

c.   When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

d.   A class action will permit an orderly and expeditious administration of each Class member's claims and foster economies of time, effort, and expense;

e.   A class action regarding the issues in this case does not create any problems of manageability; and

f.   Defendants have acted on grounds generally applicable to the members of the Class, making class-wide monetary relief appropriate.

57.   Plaintiff does not contemplate class notice if the Class is certified under Rule 23(b)(2), which does not require notice, and notice to the putative Class may

1  be accomplished through email, websites, publication, or other forms of distribution,

2  if necessary, if the Class is certified under Rule 23(b)(3) or if the Court otherwise

3  determines class notice is required.  Plaintiff will, if notice is so required, confer

4  with Defendants and seek to present the Court with a stipulation and proposed order

5  on the details of a class notice program.

## COUNT I

### Negligence

### (On Behalf of Plaintiff and the Classes and Against Defendants)

58.  Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

59.  Defendants came into possession, custody and/or control of confidential PII and BAI of Plaintiff and Class members.

60.  In collecting the Private Information of Class members, Defendants owed Plaintiff and the members of the Class a duty to exercise reasonable care in safeguarding, keeping private, and protecting such information from being accessed by and disclosed to third parties. Defendants' duties arise from, *inter alia*, California Civil Code § 1798.80, *et seq.*, and Cal. Bus. &Prof. Code § 17200, *et seq.*

61.  Defendants had a duty to, among other things, maintain and test its security systems and take other reasonable security measures to protect and adequately secure the Private Information of Plaintiffs and the Class from unauthorized access and use.  Defendants were aware that by taking such sensitive personal information of Class members, they had a responsibility to take reasonable security measures to protect the data from being stolen and easily accessed.

62.  Defendants violated these standards and duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members PII and BAI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies,

17

procedures, and software and hardware systems to safeguard and protect PII and BAI entrusted to them.

63.    It was reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII and BAI would result in the unauthorized release, disclosure, and dissemination to the world of Plaintiff's and Class members' PII and BAI for no lawful purpose.

64.    Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiff and the Class by failing to exercise reasonable care in safeguarding and protecting Class members' PII and BAI.

65.    Defendants, through their actions and/or omissions, also unlawfully breached their duties to Plaintiff and the Class by failing to timely detect the Data Breach and timely disclose that the PII and BAI within Defendants' possession had been released to unauthorized persons.

66.    As a direct and proximate result of Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and continuing increased risk of identity theft and fraud—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) invasion of privacy; (iii) breach of the confidentiality of their PII and BAI; (iv) deprivation of the value of their PII, for which there is a well-established market; and/or (v) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT II**

**Violations of the Unfair Competition Law**

**(Business & Professions Code §§ 17200, *et seq.*)**

**(On Behalf of Plaintiff and the Classes and Against Defendants)**

67.     Plaintiff repeat and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

68.     The Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful," "unfair," or "fraudulent," business act or practice and any false or misleading advertising.

69.     By virtue of their above-described wrongful actions, inaction, omissions, and lack of ordinary care that directly and proximately caused the Data Breach, Defendants engaged in unlawful, unfair, and fraudulent practices within the meaning, and in violation of, the UCL.

70.     In the course of conducting business, Defendants stored Plaintiff's and the Class members' PII and BAI in electronic databases.  Defendants knew or should have known that they did not employ reasonable measures that would have kept Plaintiff's and Class members' PII and BAI secure and prevent the loss and misuse of such information.

71.     Defendants' practices were "unlawful" because Defendants failed to take reasonable security measures in protecting former and current customers' personal and financial data, violating the statutory and common law alleged herein in the process, including, *inter alia*, the DBL.

72.     Defendants' practices were also "unlawful" because Defendants unreasonably delayed informing Plaintiff and members of the Class about the breach of security after Defendants knew that the data breach occurred.

73.     Defendants' acts and practices constitute "unfair" business acts and practices in that the harm caused by Defendants' wrongful conduct outweighs any

utility of such conduct, and that Defendants' conduct: (i) offends public policy; (ii) is immoral, unscrupulous, unethical, oppressive, deceitful and offensive, and/or (iii) has caused (and will continue to cause) substantial injury to consumers, such as Plaintiffs and the Class.

74.     There were reasonably available alternatives to further Defendants' legitimate business interests, including using the best practices to protect the personal and financial information, other than Defendants' wrongful conduct described herein.

75.     The UCL also prohibits any "fraudulent business act or practice." Defendants' above-described claims, nondisclosures, and misleading statements were false, misleading, and likely to deceive the consuming public in violation of the UCL.

76.     As a direct and proximate result of Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, and violation of the UCL; Plaintiffs and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft and fraud – risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of their PII and BAI; (iv) deprivation of the value of their PII, for which there is a well-established market, and/or (v) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

77.     Unless restrained and enjoined, Defendants will continue to engage in the above described wrongful conduct and more data breaches will occur.  Plaintiff, on behalf of himself, Class Members, and the general public, also seeks restitution, and an injunction prohibiting Defendants from continuing such wrongful conduct,

and requiring Defendants to modify their corporate culture and design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures protocols, and software and hardware systems to safeguard and protect the PII and BAI entrusted to them, as well as all other relief the Court deems appropriate, consistent with Cal. Bus. &Prof. Code § 17203.

## COUNT III

### Breach of Implied Contract

### (On Behalf of Plaintiff and the Classes and Against Defendants)

78.    Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

79.    Plaintiff brings this claim individually and on behalf of the Classes.

80.    Defendants required customers who intended to accept payment through its online platform to provide PII and BAI.

81.    In providing such information, Plaintiff and other Class members entered into an implied contract with Defendants whereby Defendants became obligated to reasonably safeguard their sensitive and non-public information.

82.    Defendants breached the implied contract with Plaintiff and Class members by failing to take reasonable measures to safeguard their Private Information.   Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft and fraud – risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of their PII and BAI; (iv) deprivation of the value of their PII, for which there is a well-established market, and/or (v) the financial and temporal cost

of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

## **COUNT IV**

### **Unjust Enrichment**

### **(On Behalf of Plaintiff and the Classes and Against Defendants)**

83. Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

84. Plaintiff brings this claim individually and on behalf of the Classes.

85. Plaintiff pleads Count IV in the alternative to Count III.

86. Plaintiff and Class members conferred a monetary benefit on Defendants.

87. Defendants received and retained money belonging to Plaintiff and the Class.

88. Defendants appreciate and/or have knowledge of such benefit.

89. Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class members, which Defendants have unjustly received as a result of their unlawful actions.

90. As a result of Defendants' conduct, Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft and fraud – risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of their PII and BAI; (iv) deprivation of the value of their PII, for which there is a well-established market, and/or (v) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT V

### Violations of the Data Breach Law

### (Cal. Civ. Code §§ 1798.80, *et seq.*)

### (On Behalf of Plaintiff and the Classes and Against Defendants)

91.    Plaintiff repeat and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

92.    The California Legislature enacted the Data Breach Law "to ensure that personal information about California residents is protected."   Cal. Civ. Code § 1798.81.5(a)(1).   The statute proscribes that a "business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."  Cal. Civ. Code § 1798.81.5(2)(b).

93.    Pursuant to Civ. Code. § 1798.81.5(d)(1), "personal information" includes an individual's name, Social Security number, driver's license or state identification card number, debit cards and credit card information, or medical information.   "Personal information" under Cal. Civ. Code § 1798.80(e) also includes addresses, telephone numbers, passport numbers, education, employment, employment history, or health insurance information.

94.    As alleged herein, Defendants violated Cal. Civ. Code § 1798.80 *et seq.* by failing to implement and maintain reasonable measures to protect its current and former customers' PII and BAI.

95.    In addition, Defendants violated Cal. Civ. Code § 1798.82 by failing to promptly notify all affected former and current customers that their personal and confidential information had been acquired by an unauthorized party (or was reasonably believed to have been acquired). Section 1798.82 of the California Civil Code provides, in relevant part:

CLASS ACTION COMPLAINT

(a) A person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose a breach of the security of the system following discovery or notification of the breach in the security of the data to a resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system.

96.    As a direct and proximate result of Defendants' above-described, wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, and their violations of the California DBL, Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft and fraud – risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of their PII and BAI; (iv) deprivation of the value of their PII, for which there is a well-established market, and/or (v) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

97.    Plaintiff is also entitled to injunctive relief under California Civil Code § 1798.84(e).

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

a.    Certifying the Class and Subclass as requested herein, appointing Plaintiff as class representative for the Class and Subclass and appointing Levi & Korsinsky, LLP as class counsel;

b.    Enjoining Defendants from engaging in the wrongful conduct

CLASS ACTION COMPLAINT

complained of herein including the misuse and/or disclosure of Plaintiff's and Class members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class members;

c.    Awarding Plaintiff and the Class appropriate relief, including actual, incidental, consequential, and nominal damages to be determined by the trier of fact;

d.    Awarding Plaintiff and the Class punitive damages;

e.    Awarding Plaintiff and the Class equitable relief, compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage and safety and to disclose with specificity the type of PII compromised during the Data Breach;

f.    For equitable relief including restitution, disgorgement of all amounts by which Defendants have been unjustly enriched;

g.    Ordering Defendants to pay for not less than three years of credit monitoring services for Plaintiff and the Class;

h.    Awarding pre- and post judgment interest at the highest legal rates applicable;

i.    Awarding appropriate attorneys' fees and litigation expenses; and

j.    Such other and further relief that the Court deems just and proper.

DATED: November 2, 2015       **DEL MAR LAW GROUP, LLP**


By:    /s/ JOHN H. DONBOLI
JOHN H. DONBOLI (SBN: 205218)
E-mail:  jdonboli@delmarlawgroup.com
JL SEAN SLATTERY (SBN: 210965)
E-mail:  sslattery@delmarlawgroup.com
12250 El Camino Real, Suite 120
San Diego, CA 92130
Telephone:  (858) 793-6244
Facsimile:  (858) 793-6005

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEVI & KORSINSKY, LLP**
SHANNON L. HOPKINS (*pro hac vice* to be filed)
shopkins@zlk.com
SHANE ROWLEY (*pro hac vice* to be filed)
srowley@zlk.com
NANCY A. KULESA (*pro hac vice* to be filed)
nkulesa@zlk.com
ANDREA CLISURA (*pro hac vice* to be filed)
aclisura@zlk.com
30 Broad Street, 24th Floor
New York, New York 10004
Telephone:  (212) 363-7500
Facsimile:  (866) 367-6510

*Counsel for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: November 2, 2015      **DEL MAR LAW GROUP, LLP**

By:    /s/ JOHN H. DONBOLI
JOHN H. DONBOLI (SBN: 205218)
E-mail:  jdonboli@delmarlawgroup.com
JL SEAN SLATTERY (SBN: 210965)
E-mail:  sslattery@delmarlawgroup.com
12250 El Camino Real, Suite 120
San Diego, CA 92130
Telephone:  (858) 793-6244
Facsimile:  (858) 793-6005

**LEVI & KORSINSKY, LLP**
SHANNON L. HOPKINS (*pro hac vice* to be filed)
shopkins@zlk.com
SHANE ROWLEY (*pro hac vice* to be filed)
srowley@zlk.com
NANCY A. KULESA (*pro hac vice* to be filed)
nkulesa@zlk.com
ANDREA CLISURA (*pro hac vice* to be filed)
aclisura@zlk.com
30 Broad Street, 24th Floor
New York, New York 10004
Telephone:  (212) 363-7500
Facsimile:  (866) 367-6510

*Counsel for Plaintiff*

26