Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
AHDOOT & WOLFSON, P.C.
1016 Palm Avenue
West Hollywood, California 90069
Tel: (310) 474-9111
Fax: (310) 474-8585

Michael A. Galpern (*pro hac vice*)
mgalpern@lockslaw.com
Andrew P. Bell (*pro hac vice*)
abell@lockslaw.com
James A. Barry (*pro hac vice*)
jbarry@lockslaw.com
LOCKS LAW FIRM, LLC
801 North Kings Highway
Cherry Hill, New Jersey 08034
Tel: (856) 663-8200; Fax: (856) 661-8400

Attorneys for Plaintiff Jonathan Koles

Shannon L. Hopkins (*pro hac vice*)
shopkins@zlk.com
Shane Rowley (*pro hac vice*)
srowley@zlk.com
Nancy Kulesa (*pro hac vice*)
nkulesa@zlk.com
Andrea Clisura (*pro hac vice*)
aclisura@zlk.com
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (232) 363-7500; Fax: (866) 367-6510

Attorneys for Plaintiff Christopher Bonnema

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN KOLES, individually, and on behalf of all others similarly-situated,<br><br>Plaintiff,<br><br>vs.<br><br>YAPSTONE, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 4:15-cv-04429-JSW<br><br>**PLAINTIFFS' MOTION TO CONSOLIDATE AND APPOINT INTERIM LEAD CLASS COUNSEL AND PLAINTIFFS' EXECUTIVE COMMITTEE**<br><br>Date: February 5, 2016 (pending Stipulation to advance hearing to January 15, 2016)<br>Time: 9:00 a.m.<br>Ctrm: 5, 2nd Floor<br>Before: Hon. Jeffrey S. White |
| CHRISTOPHER BONNEMA, individually, and on behalf of all others similarly-situated,<br><br>Plaintiff,<br><br>vs.<br><br>YAPSTONE, INC. d/b/a VACATIONRENTPAYMENT,<br><br>Defendant. | Case No.: 4:15-cv-05023-JSW |

584399.3

# NOTICE OF MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on February 5, 2016 (pending the parties' stipulated request to advance the hearing to January 15, 2016), at 9:00 a.m., or at such other date and time as the Court may provide, Plaintiffs Jonathan Koles and Christopher Bonnema will and hereby do move the Court for an Order granting the following relief:

(1)  Consolidating, for all purposes, the following two related class actions currently pending before this Court (the "Actions"):

    (a)  *Koles v. YapStone, Inc.*, Case No. 4:15-cv-04429-JSW (filed September 25, 2015); and

    (b)  *Bonnema v. YapStone, Inc.*, Case No. 4:15-cv-05023-JSW (filed November 2, 2015).

(2)  Appointing the law firm of Ahdoot & Wolfson, PC ("AW") as interim lead class counsel pursuant to Federal Rule of Civil Procedure 23(g)(3);

(3)  Appoint the law firms of Locks Law Firm, LLC ("LLF") and Levi & Korsinsky, LLP ("LK"), along with AW, to Plaintiffs' Executive Committee; and

(4)  Ordering that interim lead class counsel jointly file a master consolidated complaint, captioned *In Re YapStone Data Breach*, Case No. 4:15-cv-04429-JSW, which will serve as the operative complaint for the consolidated action.

Plaintiffs' counsel met and conferred with Defendant's counsel regarding the filing of this Motion and Defendant will not oppose consolidation of the Actions.  (*See* Declaration of Tina Wolfson ("Wolfson Decl.") ¶ 8.)  Plaintiffs have indicated to Defendant their intent to present and seek leave to file a consolidated complaint in the event consolidation is granted.  (*Id.*)

This Motion is made pursuant to Federal Rules of Civil Procedure 42 and 23(g), and is based upon this Notice; the concurrently filed Memorandum of Points and Authorities; the concurrently filed Declarations in support thereof; and such evidence and argument as the Court may consider

/ / /

/ / /

584399.3

1 | appropriate or as may be presented at or before any hearing on this motion.

2

3 | Dated:  December 29, 2015                 Respectfully submitted,

4 |                                           AHDOOT & WOLFSON, PC

5

6 |                                           __/s/ Tina Wolfson_____
7 |                                           Tina Wolfson
                                              Robert Ahdoot
8 |                                           Theodore W. Maya
                                              Bradley K. King
9

10 |                                          LOCKS LAW FIRM, LLC

11

12 |                                          __/s/ Michael A. Galpern_____
                                             Michael A. Galpern
13 |                                          Andrew P. Bell
                                             James A. Barry
14
                                             *Attorneys for Plaintiff Jonathan Koles*
15

16 |                                          LEVI & KORSINSKY, LLP

17

18 |                                          __/s/ Nancy Kulesa_____
19 |                                          Shannon L. Hopkins
                                             Shane Rowley
20 |                                          Nancy Kulesa
                                             Andrea Clisura
21 |                                          *Attorneys for Plaintiff Christopher Bonnema*

22

23

24

25

26

27

28

584399.3

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................5

III.    ARGUMENT ......................................................................................................6

   A.   The Court Should Consolidate These Related Cases ................................6

   B.   Appointment of Interim Class Counsel Is Necessary to the Management and Success of This Litigation.................................................................................................................8

   C.   The Court Should Appoint AW as Interim Lead Class Counsel and, with AW, LLF and LK to Plaintiffs' Executive Committee........................................................................8

        1.    The Work AW, LLF, and LK Already Performed Supports Appointment as Interim Class Counsel .................................................................................................9

        2.    AW's, LLF's, and LK's Experience in Handling Class Actions and Other Complex Litigation Supports AW's Appointment as Interim Lead Class Counsel and AW's, LLF's, and LK's Appointment to Plaintiffs' Executive Committee.................................................9

              a.    Ahdoot & Wolfson, PC ...........................................................10

              b.    Locks Law Firm ......................................................................12

              c.    Levi & Korsinsky, LLP ...........................................................14

        3.    AW's, LLF's, and LK's Knowledge of the Applicable Law .........................15

        4.    Resources that AW, LLF, and LK Have and Will Commit to Representing the Class Support AW's Designation as Interim Lead Class Counsel and All Three Firms as Executive Committee Members.................................................................................................15

        5.    Proposed Lead Counsel and Executive Committee Have Agreed On A Streamlined Legal Approach To These Cases And A Protocol To Ensure Efficiency .....................16

IV.     CONCLUSION .................................................................................................17

584399.3

1

## TABLE OF AUTHORITIES

2

**CASES**

3   *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138 (2013) ........................................................ 8

4   *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161 (C.D. Cal. 1976) ................. 3

5   *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, 282 F.R.D. 486 (C.D.

6   Cal. 2012) ............................................................................................................................ 4

7   *Investors Research Co. v. U.S. District Court for Cent. Dist.*, 877 F.2d 777 (9th Cir. 1989) ................. 3

8   *Kamakahi v. Am. Soc. for Reprod. Med.*, No. C 11-01781 SBA, 2012 WL 892163 (N.D. Cal. Mar. 14,

9   2012) ............................................................................................................................... 3, 5, 6

10   *Kaminske v. JP Morgan Chase Bank N.A.*, No. SACV 09-00918 JVS, 2011 WL 521338 (C.D. Cal. Jan.

11   3, 2011) .............................................................................................................................. 5, 6

12   *Levitte v. Google, Inc.*, No. C 08-03369 JW, 2009 WL 482252 (N.D. Cal. Feb. 25, 2009) ................... 6

13   *Lewis v. City of Fresno*, 2009 WL 1948918 (E.D. Cal. Jul. 6, 2009) ........................................ 4

14   *Parkinson v. Hyundai Motor Am.*, No. CV06-345-AHS-MLG, 2006 WL 2289801 (C.D. Cal. Aug. 7,

15   2006) ................................................................................................................................... 5

16   *Takeda v. Turbodyne Technologies, Inc.*, 67 F. Supp. 2d 1129 (C.D. Cal. 1999) ............................... 3, 4

17   *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049 (N.D.Cal. 2010) ....................................... 3

18

**RULES**

19   Fed. R. Civ. P. 23 ............................................................................................................... 5, 6

20   Fed. R. Civ. P. 42 ................................................................................................................... 3

21

**TREATISES**

22   Manual for Complex Litigation (Fourth) (2004) .................................................................... 5

23   Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial (Rutter Group

24   2010) ................................................................................................................................... 3

25

26

27

28

584399.3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

These two class actions, both originally filed in this District assert claims arising out of the data breach announced by Defendant YapStone, Inc. ("Defendant") in September of 2015, in which customers' personal identifying information and bank account information was exposed to access by unauthorized persons between approximately July 2014 and August 2015 by virtue of an unsecured YapStone URL.  Both complaints assert claims for negligence, breach of implied contract, unjust enrichment, violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.*, and violation of the California Data Breach Law, Cal. Civ. Code §1798.80, *et seq.*, against Defendant.  Both cases involve the same or very similar facts and claims, seek nationwide certification, and name the same Defendant.

*Koles v. YapStone, Inc.,* No. 3:15-cv-04429-JSW, was filed on September 25, 2015, and an initial case management conference has been set for January 15, 2016.  *Bonnema v. YapStone, Inc.*, No. 4:15-cv-05023-JSW was filed on November 2, 2015, and an initial case management conference also has been set for January 15, 2016.

Given the fact that the *Koles* and *Bonnema* actions have common questions of law and fact and allege the same or similar claims on behalf of the same putative classes, it is appropriate for the Court to consolidate the Actions under Rule 42, and appoint interim lead counsel so that the cases may be litigated effectively and efficiently.

Plaintiffs Jonathan Koles & Christopher Bonnema ("Plaintiffs") propose that the Court appoint Ahdoot & Wolfson, PC ("AW") as interim lead class counsel under Federal Rule of Civil Procedure 23(g)(3), and, along with AW, appoint Locks Law Firm ("LLF") and Levi & Korsinsky, LLP ("LK") to Plaintiffs' Executive Committee.  Along with LK's local counsel, Del Mar Law Group, LLP, these firms represent a consensus among Plaintiffs to collaborate.  These firms have been able to work together successfully and seek to pursue a coherent strategy that will best represent the interests of the putative classes Plaintiffs seek to represent.  These firms specialize and have extensive experience in complex class action litigation, including the types of claims at issue in this matter.  Moreover, the firms, individually, have the resources to prosecute this action and have agreed to collectively commit

1   sufficient resources to this litigation.  The lawyers in these firms have confidence in and respect for

2   each other and the complementary strengths that each brings to the joint representation.  They will

3   work together to bring this litigation to a successful resolution.

4                    **II.       FACTUAL AND PROCEDURAL BACKGROUND**

5          Plaintiff Koles is a citizen of New Jersey who listed a property in Wildwood Crest, New Jersey

6   for rent on the website www.vrbo.com, through which individuals could rent the property and pay

7   Koles for rentals.  Unbeknownst to Koles at the time, his personal identifying information related to

8   rentals of his property was passed to Defendant which processed payments for said rentals.  By letter

9   dated September 11, 2015, Koles was alerted to the fact that Defendant had subjected his personal

10  identifying information and bank account information to unauthorized access through an unsecured

11  YapStone URL between July 15, 2014 and August 5, 2014.  (*Koles* Compl. ¶¶ 3-16.)  Koles named

12  YapStone, Inc. as Defendant, asserting claims for negligence, breach of implied contract, unjust

13  enrichment, violation of the California Unfair Competition Law ("CUCL"), Cal. Bus. & Prof. Code

14  §17200, *et seq.*, violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, *et seq.*,

15  violation of the New Jersey Data Breach Act ("NJDBA"), N.J.S.A. 56:8-163, *et seq.*, and violation of

16  the California Data Breach Law ("CDBL"), Cal. Civ. Code §1798.80, *et seq.*  (*Koles* Compl. ¶¶ 37-

17  104.)  Plaintiff Koles seeks certification of a nationwide class and a New Jersey subclass.  (*Koles*

18  Compl.  ¶¶ 28-29).  An initial case management conference has been scheduled in *Koles* for January

19  15, 2016.  Defendant's answer or responsive pleading is currently due, by stipulation and order,

20  January 18, 2016.

21          Plaintiff Bonnema, a citizen of California, filed a complaint on November 2, 2015 alleging that

22  he listed a property in the Dominican Republic through www.vrbo.com and was alerted by a letter

23  dated September 11, 2015 that his personal identifying information and bank account information had

24  been accessible via an unsecured YapStone URL from approximately July 15, 2014 through August 5,

25  2014. (*Bonnema* Compl. ¶¶ 18-28.)  The *Bonnema* complaint asserts claims against YapStone, Inc.,

26  d/b/a Vacationrentpayment for negligence, violation of the CUCL, breach of implied contract, unjust

27  enrichment, and violation of the CDBL.  (*Bonnema* Compl ¶¶ 58-97.)  The *Bonnema* Complaint does

28  not assert claims under the NJCFA or NJDBA, and seeks certification of a nationwide class, and

                                         2

584399.3

1  California Subclass.  An initial case management conference also has been scheduled in *Bonnema* on

2  January 15, 2016.   No proof of service has yet been filed in the *Bonnema* case.

3  ### III.     ARGUMENT

4  **A.     The Court Should Consolidate These Related Cases.**

5  Rule 42(a) of the Federal Rules of Civil Procedure provides that if actions before the Court

6  involve a common question of law or fact, the Court may:

7  (1)     join for hearing or trial any or all matters at issue in the actions;

8  (2)     consolidate the actions; or

9  (3)     issue any other orders to avoid unnecessary cost or delay.

10  Consolidation of all related actions that involve common questions of law and fact and allege

11  the same or similar claims on behalf of the same or similar putative class is appropriate.  Courts have

12  "broad discretion under this rule to consolidate cases pending in the same district," and will not be

13  reversed absent clear error.  *Investors Research Co. v. U.S. District Court for Cent. Dist.*, 877 F.2d 777

14  (9th Cir. 1989); *see* Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial

15  § 16:151 (Rutter Group 2010).  In determining whether to consolidate cases, the court should "weigh

16  the interest of judicial convenience against the potential for delay, confusion and prejudice."

17  *Kamakahi v. Am. Soc. for Reprod. Med.*, No. C 11-01781 SBA, 2012 WL 892163, at *1 (N.D. Cal.

18  Mar. 14, 2012) (citing *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D.Cal. 2010)).

19  Class actions are particularly well suited for consolidation because unification expedites pretrial

20  proceedings, reduces case duplication, avoids confusion, and minimizes the expenditure of time and

21  money for all parties involved.  *See Kamakahi*, 2012 WL 892163, at *2 ("The Court finds that

22  consolidation will serve the interests of efficiency and judicial economy."); *Takeda v. Turbodyne*

23  *Technologies, Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999) ("Absent class members will best be

24  served by consolidation because they will have just one case to monitor as it proceeds through

25  litigation."); *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976)

26  ("[A]rgument and consideration of class action issues has been made considerably easier by the

27  consolidated complaint, because the court has not had to go through varying and conflicting class

28  allegations that may have been stated in each separate complaint. . . .").

584399.3

1   Here, the Actions at issue involve substantially similar factual issues such that consolidation

2   would serve the interests of judicial economy.  Both Actions focus on the data breach which occurred

3   via an unsecured YapStone URL, which exposed personal identifying information and bank account

4   information for those who had listed properties, and accepted payments via the YapStone platform.

5   Each case seeks to hold Defendant liable for said data breach, and center on Defendant's practices

6   regarding its data security practices and the timing of the disclosure of the data breach.  Both seek

7   certification of nationwide classes under the same causes of action, while the *Koles* action further seeks

8   certification a New Jersey subclass for violation of parallel New Jersey causes of action.  Thus, the

9   actions focus on common issues of fact and law.

10   Consolidation will promote judicial economy.  Without consolidation of the actions, the parties

11   will be required to file all pleadings, motions, stipulations, and supporting documents in each case

12   separately.  In turn, the Court will be required to issue responsive orders in each case separately.

13   Consolidation will streamline case management, discovery, and dispositive motion proceedings.

14   Accordingly, "[c]onsolidating these cases for all purposes will be the most efficient solution for the

15   court, and will ease the litigation burden on all parties involved."  *Takeda*, 67 F. Supp. 2d at 1133.

16   Consolidation will reduce rather than cause confusion or delay.  Absent class members will

17   benefit from consolidation because they will have only one case to monitor.  Similarly, the parties and

18   the Court will benefit from consolidation by reference to a single set of pleadings, motions, written

19   discovery, produced documents, and deposition transcripts.  Plaintiffs are unaware of any delay or

20   prejudice which would result from consolidation.  None of the Actions has a trial date and both

21   Actions are currently scheduled for initial conferences on the same date.  *See In re Oreck Corp. Halo*

22   *Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, 282 F.R.D. 486, 490 (C.D. Cal. 2012) ("By

23   contrast, factors that counsel against consolidation, such as differing trial dates or stages of discovery,

24   are not present here.") (citing *Lewis v. City of Fresno*, 2009 WL 1948918, *1 (E.D.Cal. Jul. 6, 2009)).

25   Accordingly, consolidation of the Actions is appropriate given the common issues of law and

26   fact, and the simplification of discovery, pretrial motion practice, class certification issues, and other

27   case management issues.

28

**B.      Appointment of Interim Class Counsel Is Necessary to the Management and Success of This Litigation.**

Federal Rule of Civil Procedure 23(g)(3) provides that a "court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Courts that have construed Rule 23(g)(3) have relied on the Advisory Committee Notes accompanying the rule to hold that interim counsel should be appointed when necessary to protect the interests of the putative class. *See, e.g.*, *Parkinson v. Hyundai Motor Am.*, No. CV06-345-AHS-MLG, 2006 WL 2289801, at *2 (C.D. Cal. Aug. 7, 2006) (quoting Fed. R. Civ. P. 23, Advisory Committee Notes (2003)). Further, the Notes contemplate that "[t]ime may be needed to explore designation of class counsel under Rule 23(g)" and recognize "that in many cases the need to progress toward the certification determination may require designation of interim counsel." Fed. R. Civ. P. 23, Advisory Committee Notes (2003). In complex matters such as this, one of the key organizational tools a district court has is to appoint interim class counsel pursuant to Rule 23(g). *See* Manual for Complex Litigation (Fourth) §10.22 (2004) ("Complex litigation often involves numerous parties with common or similar interests but separate counsel. . . . Instituting special procedures for coordination of counsel early in the litigation will help to avoid these problems."); *Id.* § 21.11 ("[A] number of lawyers may compete for class counsel appointment. In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement."). Appointment of interim lead counsel is appropriate even where as few as two similar cases are pending. *See, e.g.*, *Kamakahi*, 2012 WL 892163, at *2 (consolidating two cases and appointing interim lead counsel); *Kaminske v. JP Morgan Chase Bank N.A.*, No. SACV 09-00918 JVS, 2011 WL 521338, at *1 (C.D. Cal. Jan. 3, 2011) (consolidating three cases and appointing interim lead counsel).

**C.      The Court Should Appoint AW as Interim Lead Class Counsel and, with AW, LLF and LK to Plaintiffs' Executive Committee.**

The Federal Rules enumerate the following factors that inform designation of lead counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's

1   experience in handling class actions, other complex litigation, and the types of claims asserted in the

2   action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit

3   to representing the class." Fed. R. Civ. P. 23(g)(l)(A); *see also Kamakahi*, 2012 WL 892163, at *2;

4   *Kaminske*, 2011 WL 521338, at *2; *Levitte v. Google, Inc.*, No. C 08-03369 JW, 2009 WL 482252, at

5   *2 (N.D. Cal. Feb. 25, 2009). The Court may also "consider any other matter pertinent to counsel's

6   ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(l)(B).

7          The considerations set forth below in detail support the designation of Plaintiffs' chosen

8   counsel as interim lead counsel. The proposed interim lead counsel and executive committee will

9   zealously, efficiently, and competently litigate this matter in the best interests of the members of the

10  class.

11         **1.      The Work AW, LLF, and LK Already Performed Supports Appointment as**

12                 **Interim Class Counsel.**

13         In addition to the extensive pre-filing investigation and carefully crafting the initial class action

14  complaint over a month ago, Plaintiffs' counsel have continued to prepare the claims in anticipation of

15  Defendant's Answer or Motion to dismiss, which is currently due in *Koles* on January 18, 2015. (*See*

16  *Koles* Dkt. No. 24.)

17         **2.      AW's, LLF's, and LK's Experience in Handling Class Actions and Other Complex**

18                 **Litigation Supports AW's Appointment As Interim Lead Class Counsel and AW's,**

19                 **LLF's, and LK's Appointment to Plaintiffs' Executive Committee**

20         The AW, LLF, and LK firms are well experienced in class actions and complex litigation of

21  this nature, and have extensive experience in the prosecution of claims in this case. All three firms

22  focus their practice on class action litigation, and have collectively represented plaintiffs in hundreds

23  of class action lawsuits in state and federal courts throughout the country in a variety of fields,

24  including claims relating to consumer class actions in general, and employment- and privacy-related

25  claims in particular. AW is located in California, LLF is located in New Jersey, and LK is located in

26  New York, and all have extensive experience and substantial expertise in representing consumers and

27  employees in class actions pursuant to state and federal law. *See generally*, Wolfson Decl.; Galpern

28  Decl.; Kulesa Decl.

584399.3

a.       **Ahdoot & Wolfson, PC**

As set forth in the Declaration of Tina Wolfson, submitted contemporaneously herewith, Ahdoot & Wolfson, PC ("AW") is a top tier law firm specializing in advocating consumer and employee rights.  AW vigorously litigates against large corporations to vindicate the rights of millions of consumers or employees in protracted, complex litigation, to successful results.

AW is an eight-attorney firm founded in 1998. The vast majority of its practice is plaintiffs' class action litigation. As a founding member, Wolfson has been appointed class counsel in numerous class actions, and has obtained extensive experience in prosecuting complex class action and representative lawsuits. Her vast complex and class action litigation experience is outlined in her *curriculum vitae*, which is attached to her Declaration as Exhibit A.  (Wolfson Decl. ¶ 2.)  For the sake of brevity, only her privacy-related work is detailed below.

The law of electronic privacy is evolving quickly and the attorneys at AW are seasoned practitioners in this area who not only know the law, but have also helped shape it. Tina Wolfson and Robert Ahdoot were among the first group of attorneys who successfully litigated the privacy rights of millions of consumers against major financial institutions. The plaintiffs alleged that the defendants used their personal information to compile detailed financial data to use for internal marketing purposes and to sell to third party telemarketers, without their consent. As lead counsel in these privacy class actions, AW brought the consumer claims to successful conclusion on a class-wide basis, conferring millions of dollars of benefits to consumers. The business practices that her clients challenged in those cases later became the subject of Graham Leach Bliley Act regulation. These consumer privacy class actions successfully prosecuted, without limitation, Chase Manhattan Bank, American Express, MBNA America Bank, Discover Bank, FleetBoston, and Washington Mutual Bank. Since then, AW has prosecuted numerous class actions involving consumer privacy rights, including data breach class actions involving medical privacy rights, gaining invaluable experience critically important to prosecuting this case.

AW's attorneys also have helped shape data breach class action law within the past year. For instance, in *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015), AW successfully appealed a trial court order granting a motion to dismiss based on lack of Article III standing. The

7

584399.3

Seventh Circuit's groundbreaking opinion was the first appellate decision to consider the issue of Article III standing in data breach cases since, and in light of, the Supreme Court's decision in *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138 (2013). The defense bar has aggressively advocated that *Clapper* set a more rigorous standard for Article III standing inquiries than previously existed and that, in light of that decision, data breach cases generally lack standing unless the plaintiffs could show that they suffered unreimbursed fraudulent charges. As a result of AW's successful appeal, the Seventh Circuit adopted the plaintiffs' reasoning, rejected this narrow view of *Clapper*, and established that data breach victims have standing to pursue claims based on the increased risk of identity theft and fraud, even before that theft or fraud materializes. Since that decision was handed down, numerous courts have followed its reasoning, and consumers injured in such breaches now have legal recourse that many courts previously denied to them.

AW also was instrumental to the consumer plaintiffs' efforts in the *Target* data breach litigation, where AW contributed considerable effort to vetting hundreds of potential class representatives in a streamlined and efficient manner, responding to discovery requests and defending depositions, legal research, and the consolidated complaint, among other projects. *In re: Target Corporation Customer Data Security Breach Litigation*, Case No. 14-md-2522 (D. Minn.). Ms. Wolfson also currently serves, by court appointment, on the Consumer Plaintiffs' Steering Committee in *The Home Depot, Inc., Customer Data Security Breach Litigation*, Case No. 14-md-2583 (N.D. Ga.). She is also serving, by court appointment, on the Plaintiffs' Executive Leadership Committee in the current MDL action entitled *In re: Premera Blue Cross Customer Data Security Breach Litigation*, Case No. 3:15-md-02633-SI (D. Or.).

AW also has prosecuted medical privacy class actions on behalf of victims of data breaches under the California Confidentiality of Medical Information Act. For example, AW was a member of the Executive Committee in the consolidated actions entitled *Whitaker v. Health Net*, Case No. 2:11-cv-00910-KJM (E.D. Cal.), and in the *Sutter Medical Information Cases*, Case No. JCCP 4698 (Cal. Super. Ct., Sacramento Cty.). AW also currently represents plaintiffs in cases arising out of data breaches affecting patients of the U.C.L.A. healthcare system. *A.Y. v. Regents of the Univ. of Cal.*, Case No. BC590344 (Cal. Super. Ct., Los Angeles Cty.) (and related actions).

8

584399.3

1      Recognized for her class action experience, Ms. Wolfson is often invited to chair or lecture at

2 seminars on issues pertaining to class action litigation and has been published on topics in this area.

3 She was a co-chair and panelist at a CLE program co-sponsored by the Federal Litigation Section of

4 the Federal Bar Association and the Northern District of California on November 12, 2015 at the

5 Ceremonial Courthouse, addressing the latest developments in class action practice, featuring the Hon.

6 Jon S. Tigar and the Hon. Laurel Beeler and approximately 200 experienced class action attorneys

7 attending.

8      Recognized for her privacy litigation experience, Ms. Wolfson has been invited to lecture about

9 data breach litigation issues. She spoke at the HarrisMartin Data Breach Conferences in March 2014

10 and 2015 concerning the Neiman Marcus and Anthem data breaches, respectively. Further, Ms.

11 Wolfson was recently selected to serve as a member of the Privacy Law Subcommittee of the State Bar

12 of California's Antitrust and Unfair Competition Law Section.

13      Overall, AW is fully committed to this action.  AW has the necessary financial resources and

14 legal experience to prosecute this action to a successful conclusion.  AW intends to dedicate substantial

15 resources to this action and work collaboratively and cooperatively with defense counsel, as well as

16 any other plaintiffs' firms, including Plaintiff Bonnema's counsel.  The collective experience of AW

17 will allow it to ably serve as interim lead class counsel in this action.  (Wolfson Decl. ¶¶ 4-7.)

18      **b.**    **Locks Law Firm**

19      As set forth in the Declaration of Michael A. Galpern, Locks Law Firm ("LLF") specializes in

20 complex and class action litigation on the plaintiff side, including consumer class actions, wage and

21 hour class and collective actions, mass tort pharmaceutical litigation, toxic tort litigation, medical

22 malpractice and catastrophic personal injury cases.  LLF is one of the most recognized plaintiff

23 litigation firms in the United States and regularly litigates consumer fraud and other complex class and

24 mass tort actions, many of which have resulted in substantial recoveries for the represented classes.

25 We have been appointed as lead or co-lead counsel in some of the largest consumer class actions

26 throughout class action jurisprudence history.  Gene Locks, the founding partner of the firm, pioneered

27 asbestos personal injury litigation in the 1970s, eventually representing more than 16,000 person

28 injury victims in more than 20 different states.  Mr. Locks was appointed co-lead counsel in the

584399.3

1  "Asbestos Personal Injury Litigation" MDL 185 for many years.  Mr. Locks gained a national

2  reputation for his proven ability to reorganized multi-million dollar former asbestos companies, which

3  have then paid out hundreds of millions of dollars in benefits to hundreds of thousands of asbestos

4  victims.

5       Because of the firm's litigation experience, negotiating reputation and ability to persevere and

6  sustain lengthy litigation, Mr. Locks was appointed by the Honorable Jack B. Weinstein of the Eastern

7  District of New York to the Management Committee of the Agent Orange Litigation, MDL 381 and

8  was co-chair of the negotiating committee which resulted in a $180 million settlement, the largest

9  class action settlement of personal injury class of victims at that time.

10      In the late 1990s, Mr. Locks was co-lead negotiator and on the PSC in the In re: Diet Drugs

11  (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation, MDL No. 1203, which

12  culminated in a $3.75 billion settlement.  LLF partner, Michael A. Galpern, was appointed to the

13  Plaintiff Steering Committees of multiple other pharmaceutical MDLs, including for Propecia (In re:

14  Propecia (Finasteride) Products Liability Litigation, MDL No. 2331), Bextra and Celbrex (In Re:

15  Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation, MDL No. 1699).

16  LLF was also appointed co-lead counsel in In re: Staples, Inc., Wage and Hour Employment Practices

17  Litigation, MDL No. 2025.  LLF partner Andrew P. Bell worked extensively with Mr. Locks and Mr.

18  Galpern in the Diet Drugs MDL and in the Staples MDL.  In addition, Mr. Bell has been appointed

19  class counsel or co-class counsel in numerous consumer fraud class actions in both state and federal

20  courts throughout the country.  *See* C.V. of Andrew P. Bell, attached hereto.  Finally, LLF associate

21  James A. Barry is a former law clerk for New Jersey Supreme Court Justice Faustino J. Fernandez-

22  Vina, has extensive experience in litigation, has been appointed as class counsel in *Caparola v. Wells*

23  *Fargo*, and has argued as *amicus* curiae before the New Jersey Supreme Court regarding the

24  enforceability of arbitration clauses contained in student agreements between students and a for-profit

25  school in *Morgan v. Sanford Brown Institute*, Docket No.: A-31-14.

26      Most recently, LLF was also appointed Co-Class Counsel and to the PSC of the In Re:

27  National Football League Players' Concussion Injury Litigation, MDL No. 2323, which involved

28  complex issues of federal preemption of state tort laws, and which culminated in a $765 million

10

584399.3

settlement, which was later "uncapped" to provide compensation greater than that amount for claims for the next 65 years.

In short, LLF is well qualified to serve on Plaintiffs' Executive Committee in these matters and has committed the necessary staffing and financial resources to prosecute this action to a successful conclusion. Along with AW and LK, LLF will work cooperatively with defense counsel to most efficiently and effectively bring this case to judgment.

### c.   Levi & Korsinsky, LLP

L&K is one of the nation's leading plaintiffs' law firms with over eighty years of combined partner experience litigating complex securities and consumer class actions in state and federal courts throughout the country. The firm has a long track record of litigating high-stakes, resource-intensive cases and consistently achieving results for our clients.   Headquartered in New York City with offices in Connecticut, California, Washington, DC and New Jersey, Levi & Korsinsky LLP zealously litigates each case with integrity, determination and professionalism.

The firm has routinely been appointed lead counsel in significant multi-million dollar securities class actions in courts across the country. For example, we were selected from a crowded field as co-lead counsel in *E*TRADE Financial Corp. Sec. Litig.*, No. 07-cv-8538 (S.D.N.Y. 2007), a landmark securities fraud class action that arose out of the mortgage crisis. Our successful prosecution of the case resulted in a $79 million recovery for the shareholder class.

Levi & Korsinsky protects consumers by holding corporations accountable for defective products, false and misleading advertising, overcharging, data breaches and unfair or deceptive business practices. The firm's litigation and class action expertise combined with an in-depth understanding of federal and state laws enable it to fight effectively for consumers who purchased defective products.

The firm has recently been appointed as Co-Lead Counsel in *n re NJOY, Inc.*

11

584399.3

1   *Consumer Class Action Litigation*, 14-cv-00428-MMM (JEM) (C.D. Cal.) and Klein v. TD

2   Ameritrade Holding Corporation, 8:14cv396 JFB (TDT) (D. Neb) among others.

3   Moreover, L&K is well qualified to serve on Plaintiffs' Executive Committee in this action

4   and has committed the necessary staffing and financial resources to prosecute this action to

5   a successful conclusion.   Along with AW and LLF, L&K will work cooperatively with

6   defense counsel to most efficiently and effectively resolve this litigation.

7

8   **3.    AW's, LLF's, and LK's Knowledge of the Applicable Law.**

9   Proposed interim class counsel and executive committee have researched the law applicable to

10  data breach claims at issue in these Actions extensively, and are best prepared to oppose Defendant's

11  anticipated motion to dismiss those claims.   Counsel's knowledge of the applicable law is perhaps best

12  demonstrated by AW's most recent success in arguing plaintiff's case before the Seventh Circuit in

13  *Remijas v. Neiman Marcus*, 794 F.3d 688 (7th Cir. 2015).

14  **4.    Resources that AW, LLF, and LK Have and Will Commit to Representing the**

15  **Class Support AW's Designation as Interim Lead Class Counsel and All Three**

16  **Firms as Executive Committee Members.**

17  Proposed lead counsel and executive committee have already demonstrated the will and ability

18  to commit the necessary resources to assure a strong and well-supported case on behalf of the class

19  members.   Already, these firms have thoroughly investigated, developed, and gathered evidence of

20  Plaintiffs' claims against Defendant.   Going forward, these firms will continue to staff this case with

21  experienced lawyers to prepare pleadings, write memoranda, conduct discovery, and assist in trial

22  preparation.

23  As interim class counsel and executive committee, the proposed firms will continue to commit

24  the same resources and effort to this case as they have committed to their other, successful litigations.

25  These firms' many years of successful litigation, described above and more fully described in the

26  accompanying declarations, demonstrate a proven track record of bringing to the table all resources

27  necessary to effectively litigate the claims in this matter.   Combined, these firms will bring more than

28  enough resources to zealously advocate the interests of the putative plaintiff class.   AW, LLF, and LK

12

584399.3

1    have agreed to make this case a major focus of their litigation efforts, and are committed to litigating it

2    successfully on behalf of the putative class. Lastly, while AW, LLF, and LK detail the experience of

3    the eleven attorneys they expect to be most involved in the litigation, it should be stressed that every

4    effort will be made to efficiently staff the litigation to avoid duplication of efforts.

5         **5.**      **Proposed Lead Counsel and Executive Committee Have Agreed On A Streamlined**

6                 **Legal Approach To These Cases And A Protocol To Ensure Efficiency.**

7         AW, LLF, and LK have thought through a streamlined legal strategy, as well as an efficient

8    approach to the scheduling in this case. Under this approach, the claims of the putative class members

9    would be pursued through traditional common law theories, and the goal is to recover (1) out-of-pocket

10    expenses relating to actual identity theft, (2) the cost associated with protecting oneself against future

11    identity theft, and (3) "overpayment" for the data protection services that the class paid for, and that

12    Defendants promised, but never delivered. *See Remijas*, *supra*; *see also Resnick v. AvMed, Inc.*, 693

13    F.3d 1317, 1322, 1328 (11th Cir. 2012) (re: identity theft and overpayment, respectively).

14         Further, Proposed Lead Counsel and Plaintiffs' Executive Committee are fully aware of the

15    Court's expectation that they will prosecute the case efficiently and without duplication. To that end,

16    they have agreed upon a comprehensive work assignment and billing protocol to ensure efficiency,

17    which includes, without limitation, the following elements:

18
19    •    AW, LLF, and LK have agreed not to seek compensation for time spent negotiating plaintiffs'
       leadership in this case;

20    •    All counsel will submit uniform monthly billing reports to lead counsel for auditing.

21
22    •    Proposed Lead Counsel each have kept contemporaneous time records, will continue to do so,
       and will instruct all Plaintiffs' counsel to do so.

23
24    •    Proposed Lead Counsel shall bill in increments no larger than a tenth of an hour. Proposed
       Lead Counsel will instruct all Plaintiffs' counsel to follow similar practices.

25    •    No work will be considered billable unless specifically assigned by Proposed Lead Counsel.

26    •    No more than two attorneys will appear for status hearings before the Court. For substantive
       hearings, such as hearings on Motion to Dismiss, Class Certification, Summary Judgment, etc.,

27        Proposed Lead Counsel will use their discretion to staff the hearing efficiently and have only as
       many attorneys as truly necessary appear.

28

584399.3

1

2

- Proposed Lead Counsel will staff the case efficiently on an as needed bases, with staff of appropriate seniority, skill set and expertise.

3

4

- Each of the Proposed Lead Counsel will limit his or her firm to no more than three attorneys to bill on the case, unless all Proposed Lead Counsel agree that circumstances warrant higher levels of staffing.

5

6

7

- Unless otherwise authorized by Proposed Lead Counsel, Plaintiffs' counsel shall send no more than two attorneys and one paraprofessional to any deposition.  When possible, counsel shall limit attendance to no more than one attorney.

8

9

10

- Proposed Lead Counsel shall only seek reimbursement for economy or coach-class airfare for travel, and will make reasonable arrangements for lodging.  Proposed Lead Counsel shall seek reimbursement only for reasonable accommodations, not to exceed $450 per night, plus tax, and per diem meal expenses will not exceed $120 per person.

11

- Proposed Lead Counsel shall not seek reimbursement for expenses or costs incurred as part of normal overhead costs for running a law firm.

12

13

## IV.    CONCLUSION

14

15

16

17

18

Based on the foregoing, Plaintiffs Jonathan Koles and Christopher Bonnema respectfully request that the Court consolidate these Actions, appoint the law firm of Ahdoot & Wolfson, PC as interim lead class counsel, Ahdoot & Wolfson, PC, Locks Law Firm, LLC and Levi & Korsinsky, LLP to Plaintiffs' Executive Committee, and order that a master consolidated complaint be filed by interim lead class counsel, to be named *In Re YapStone Data Breach*, Case No. 4:15-cv-04489-JSW.

19

20

Respectfully submitted,

21

22

Dated:  December 29, 2015              AHDOOT & WOLFSON, PC

23

24

    /s/ Tina Wolfson
Tina Wolfson

25

Robert Ahdoot
Theodore W. Maya

26

Bradley K. King

27

LOCKS LAW FIRM, LLC

28

14

584399.3

1

2                                          __/s/ Michael A. Galpern_____

3                                          Michael A. Galpern
                                           Andrew P. Bell
                                           James A. Barry
4

5                                          *Attorneys for Plaintiff Jonathan Koles*

6                                          LEVI & KORSINSKY, LLP

7

8                                          __/s/ Nancy Kulesa_____

9                                          Shannon L. Hopkins
                                           Shane Rowley
10                                         Nancy Kulesa
                                           Andrea Clisura
11                                         *Attorneys for Plaintiff Christopher Bonnema*

12

13                          **<u>ATTESTATION OF FILER</u>**

14
        Pursuant to L.R. 5-1(i)(3), the undersigned hereby attests that all signatories above have
15
concurred in the filing of this motion.
16

17

18                                          /s/ Tina Wolfson
                                           Tina Wolfson
19

20

21

22

23

24

25

26

27

28

584399.3

1

## CERTIFICATE OF SERVICE

2      I, Tina Wolfson, counsel for Plaintiffs Jonathan Koles, hereby certify that on December 29,

3  2015, I caused to be filed a true and correct copy of the foregoing PLAINTIFF'S MOTION TO

4  CONSOLIDATE AND APPOINT INTERIM LEAD CLASS COUNSEL AND PLAINTIFFS'

5  EXECUTIVE COMMITTEE; DECLARATION OF TINA WOLFSON; DECLARATION OF

6  MICHAEL A. GALPERN; DECLARATION OF NANCY KULESA; [PROPOSED] ORDER

7  electronically using the Court's electronic case filing (CM/ECF) system, which automatically

8  generated and sent a notice of electronic filing to the e-mail addresses of all counsel of record.

9

10                        /s/ Tina Wolfson
                          Tina Wolfson
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

584399.3